# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-427V
UNPUBLISHED

| | |
|---|---|
| DONI CORCORAN,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: September 23, 2025 |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA*, for Petitioner.

*Parisa Tabassian, U.S. Department of Justice, Washington, DC*, for Respondent.

### RULING ON ENTITLEMENT[1]

On January 8, 2021, Doni Corcoran filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Table injury – shoulder injury related to vaccine administration ("SIRVA") - as the result of a Tetanus, Diphtheria, and acellular Pertussis ("Tdap") vaccine received on May 18, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding an expedited hearing on the disputed issues, I find that Petitioner is entitled to compensation for her SIRVA Table injury.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

I.      **Relevant Procedural History**

This case was initiated in January 2021. On May 25, 2023, Respondent filed his Rule 4(c) Report and Motion to Dismiss. ECF No. 26. Petitioner was subsequently ordered to file a combined Response to Respondent's Rule 4 Report and Motion for ruling on the record addressing whether Petitioner has established that she met the Act's severity requirement pursuant to Section 11(c)(1)(D), and otherwise established a SIRVA Table claim. Petitioner filed her motion and response on September 6, 2023, Respondent filed a brief in reaction on October 4, 2023, and Petitioner filed a reply brief on October 11, 2023. ECF Nos. 28-30.

The parties were subsequently notified that I would resolve this dispute via an expedited hearing, which took place on September 5, 2025. ECF No. 31. After considering the arguments of both sides and questioning the parties in regard to the disputed issues at the expedited hearing on September 5, 2025, I issued an oral ruling finding Petitioner entitled to compensation. This Ruling memorializes those findings/determinations.

II.     **Factual Findings and Ruling on Entitlement**

   A. **Legal Standards**

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25,

1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. Section 11(c)(1)(A)(B)(D)(E).

4

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Findings

#### 1. Situs

A preliminary issue in this case is whether Petitioner received her May 18, 2019 vaccination in her left shoulder as alleged. Respondent correctly points out that the vaccine administration record is inconsistent in regard to this situs issue. The record states that Petitioner received her vaccination in her (injured) left upper arm in one location, yet also states Petitioner received her vaccination in her right arm in another location. Ex. 2 at 5 (pharmacy service details form provides "Site of Admin: Left Upper Arm"); Ex. 2 at 12 (pharmacy questionnaire and consent form provides "Site RA or LA Circle One" and "Site RA" is hand circled).

However, at her first medical visit to address her shoulder pain, Petitioner specifically reported that she received the vaccine in her *left arm*. Ex. 5 at 8 (December 4, 2019 primary care appointment noting: "[A]bout five months ago, *she got the pertussis vaccine in her left arm*. Within the next day, she had pain in that arm and it hasn't really gotten any better") (emphasis added). Thereafter, Petitioner consistently reported the same situs.

Additionally, Petitioner explains in her supplemental sworn declaration that she "usually receive[s] vaccinations in [her] left arm," because she is right-handed. Ex. 13 at 1-2 (citing Ex. 2 at 5, 11-12). This statement is supported by the vaccine administration records from Petitioner's December 6, 2016 and November 5, 2019 vaccinations. Ex. 2 at 4, 6, 8, 10.

Accordingly, I find that more likely than not that Petitioner's May 18, 2019 vaccination was administered in Petitioner's left shoulder as alleged.

#### 2. Onset

The Table requirement for SIRVA that Respondent contests is whether Petitioner's first post-vaccination symptom or manifestation of onset (specifically pain) occurred within 48 hours of her vaccination, as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a)(II)(C) (pertussis vaccines); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); ECF No.

5

29 at 8-11. Based upon a review of the entire record, and for the reasons set forth below, I find that it more likely than not was.

Petitioner's first few medical encounters after her vaccination do not document a complaint of left shoulder pain. However, these encounters (which included dermatology visits, phone messages to her primary care provider regarding prescription refills, and a record documenting only the administration of an influenza vaccination on November 5, 2019 (and not containing any medical history)) are not events wherein it would be necessarily expected for Petitioner to report, or for the provider to document, shoulder pain. Ex. 4 at 30-41; Ex. 5 at 11-13; Ex. 2 at 3, 6. Additionally, although Petitioner received another vaccination on November 5, 2019, and in the same shoulder, I do not find that this fact defeats her claim, as it is common for individuals to routinely elect to receive vaccinations in their non-dominant shoulder (which Petitioner states in her supplemental affidavit is her practice).[4] Ex. 13 at 1-2. Petitioner also explains in her supplemental declaration that she received the flu vaccine in anticipation of a trip to Hawaii to visit her daughter, who was "about to give birth to my grandchild," and there is no evidence that Petitioner's alleged initial shoulder injury was aggravated by her later vaccination. Ex. 13 at 2.

More significantly, as Respondent points out, Petitioner failed to report to *any* medical provider that she suffered shoulder pain for more than six months post vaccination. Moreover, the first medical record documenting Petitioner's report of shoulder pain – a telephone encounter with her primary care office on November 26, 2019 – *could* be read as documenting a one-month complaint of shoulder pain, and fails to mention her May 2019 vaccination at all. Ex. 5 at 11 (telephone message from Petitioner reporting she was "[h]aving r[igh]t hip and l[ef]t shoulder problems. Pain. No injuries. [G]oing on for a month now, she limps, and movement []when she reaches behind her back hurts her shoulder."). Thereafter, when Petitioner was seen by her primary care provider, and subsequently, a physical therapist and an orthopedist, she associated her left shoulder pain as occurring after her May 2019 vaccination – but misidentified that vaccination as occurring in July. Ex. 5 at 8; Ex. 6 at 39; Ex. 8 at 28.

However, and as Petitioner persuasively explained in her brief, ECF No. 28 at 13-14, and at the expedited hearing in this case, her telephone message to her PCP on November 26, 2019 was to report both hip and shoulder pain. Her report of a one-month history of pain was in reference to her hip pain, "going on for a month now, she limps" while the second half of the same sentence "and movement []when she reaches behind her back hurts her shoulder" was separately in reference to her shoulder pain. *Id.* This construction of the telephone message as not defeating onset is bulwarked by Petitioner's

---

[4] This is, however, relevant to severity, and will be taken into account in calculating pain and suffering.

subsequent visit to her PCP on December 4, 2019. Ex. 5 at 8. At that time, she reported that "about 5 months ago, she got the pertussis vaccine in her left arm. *Within the next day,* she had pain in that arm and it hasn't really gotten any better." *Id.* (emphasis added). At the same appointment, Petitioner also reported "[a]bout 6 weeks ago she started to develop some right neck[5] pain. It hurts over the outer aspect of the hip, especially if she tries to go up stairs. She is able to go down stairs without trouble and is only mildly tender when she lays on it. It does not give out on her and does not pop or click." *Id.* Thus, the onset of different pains was identified specific to the pain in question – and shoulder pain onset was linked in at least some of these records to the May 2019 vaccination.

Petitioner further explained in her supplemental declaration and brief that she incorrectly estimated that she had received a vaccination in July 2019. Ex. 13 at 3-4; ECF No. 30 at 3.[6] However, these same records consistently report that she developed shoulder pain within one day of her vaccination. Ex. 5 at 8 (December 4, 2019, PCP appointment: "[A]bout 5 months ago [or July 4, 2019], *she got the pertussis vaccine in her left arm. Within the next day, she had pain in that arm and it hasn't really gotten any better.*") (emphasis added); Ex. 6 at 39 (December 9, 2019, Initial PT Evaluation: "Pt. reports of L[eft] shoulder pain that has been ongoing for 5 months [or since July 9, 2019] and worsening. *Pt. states this occurred after DPT shot.*") (emphasis added); Ex. 8 at 28 (February 26, 2020 Orthopedic Evaluation: "She reports July 2019 *after getting a TDAP vaccine she started experiencing significant pain in her left shoulder.*") (emphasis added).[7]

Petitioner has also filed numerous declarations in support of the onset of her shoulder pain. I find that the declarations, filed by Petitioner (Exs. 1, 13), her husband, Kevin Corcoran (Ex. 20), her two sisters, Cindy Smerdon (Ex. 17) and Linda Celano (Ex. 19), and her daughter, Lauren Thompson (Ex. 18), provide credible (and consistent) support for Petitioner's claim that she suffered the onset of her shoulder pain within 48 hours of her Tdap vaccine in May 2019.

---

[5] The reference to "neck pain" in the context of the medical record, clearly appears to be a typographical error and should read "hip pain." Ex. 5 at 8.

[6] Petitioner also credibly argued in her brief, and at the hearing, that she likely conflated her May 2019 date of vaccination to her providers as occurring July 2019, because she received the vaccination in anticipation of the birth of her grandchild in July 2019. ECF No. 28 at 13.

[7] I note that at the September 5, 2025 hearing Respondent also raised the argument that Petitioner's continued engagement in tennis was further evidence that she did not suffer the onset of a shoulder injury within 48 hours of her Tdap vaccination in May 2019. However, as pointed out in Petitioner's brief, and by Petitioner at the hearing, Petitioner's physical therapy evaluation on December 9, 2019, specifically notes "Pt. plays tennis 3 days a week and her L[eft] shoulder pain only affects her ball toss for serving" – since she is right hand dominant and therefore serves using her right arm while tossing the ball into the air with her left arm. ECF No. 28 at 5 (citing Ex. 6 at 39). Accordingly, I do not find Respondent's argument persuasive on this point.

Petitioner in her supplemental declaration states she received a Tdap vaccine in her left shoulder of her non-dominant arm. Ex. 13 at 1-2. Petitioner states that she experienced pain immediately following her vaccination which worsened in the following 24 hours. Ex. 13 at 1-2. Petitioner states that when she got to her car after receiving her vaccination, she called her sister, a nurse, and reported the shot was too high and that she was in pain. *Id*. at 2. Her sister told her it was to be expected, and her pain would start to go away in the next few days. *Id.* Petitioner states as time went on her pain worsened, she did not report it to her PCP's office when she emailed for prescription refills, because she thought her shoulder pain would get better on its own, and she was calling specifically for her medication. *Id*.

Petitioner further states that on November 5, 2019, she received a flu vaccination in anticipation of a trip to Hawaii to visit her daughter who was due to give birth to her grandchild, and that she had no additional pain related to her flu vaccination. Ex. 13 at 2. By mid-November 2019, Petitioner states her pain had persisted since her Tdap vaccination, but she believed that it would "heal naturally on its own." *Id*. However, after she was not able to hold her newborn grandchild due to the pain and weakness, she decided she needed to call her PCP and make an appointment to have her shoulder examined. *Id.* Petitioner states that on November 26, 2019, she called her PCP's office to report her left shoulder pain and also reported right hip pain. *Id.* She states when she saw her PCP on December 4, 2019 she mistakenly estimated she received her Tdap vaccine approximately five months earlier, instead of seven months earlier. *Id.* at 3. Petitioner states that she made this same mistake at her physical therapy appointment on December 9, 2019 and again at her orthopedic appointment on February 26, 2019. *Id.* at 3-4.

Petitioner's family members all recall that she received the Tdap vaccine in May 2019, in anticipation of the upcoming birth of a grandchild in July 2019. Exs. 17-20. Thereafter, they each recall that she complained of shoulder pain. Specifically, Ms. Smerdon, a registered nurse, states that she speaks to her sister each day. Ex. 17 at 1. She recalls in "May of 2019" that "she received a call from Doni complaining that her arm hurt because of the vaccination she had just received." *Id.* Ms. Smerdon states she advised her sister "that it was normal to have some pain after a vaccination and that the pain from a Tdap in particular usually lasts longer. I told her just to give it some time to go away on its own." *Id*. Mr. Corcoran recalls that the "same day Doni got her tetanus vaccine that she claimed to me that her shoulder hurt and that she thought it might have been because they administered the vaccine wrong." Ex. 20 at 1. Ms. Thompson states in her declaration that she speaks to her mother "frequently over the phone" and describes her family as "very close." Ex. 18 at 1. She recalls "my mother calling me on the same day that she got her vaccination. She complained that her arm hurt. My mom is notorious for

8

being fearful of needles, so I remember saying something to the effect of everyone can handle a shot and that that she would probably be sore for a couple of days before it would go away on its own." *Id.*

I credit Respondent's arguments about the vagueness and conflicting reports of certain records pertaining to onset in this case, but note that the Program's evidentiary standards are still satisfied by the totality of evidence in this record. As I have previously observed, "the Vaccine Act clearly does *not* require that symptoms be recorded within a specific timeframe to be preponderantly established. Rather, it requires only that onset [likely] *occurs* in the relevant timeframe." *Niemi v. Sec'y of Health & Hum. Servs.,* No. 19-1535V, 2021 WL 4146940, at *4 (Fed. Cl. Aug. 10, 2021) (citing Section 13) (emphasis in original). Neither does the Act require that the medical records document an exact date that the onset of a petitioner's shoulder pain began. A special master may thus find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2).

Based on the medical record, as supported and explained by the witness declarations filed in support of Petitioner's claim, I find that Petitioner likely suffered the onset of her shoulder pain within 48 hours of her May 18, 2019 vaccination.

### 3. Severity

The final contested issue is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the Tdap vaccine on May 18, 2019, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued *at least* through November 18, 2019. However, as I have found above that Petitioner suffered the onset of her injury within 48 hours of her vaccination, despite a delay of over six months in reporting her shoulder pain following her vaccination to a medical provider, it necessarily follows (from the evidence of delayed treatment) that Petitioner has suffered the residual effects or complications of her SIRVA for more than six months following her May 18, 2019 Tdap vaccine.

Accordingly, Petitioner has established that she suffered the sequela of her injury for more than six months. However, I note that while my finding on severity follows my finding on onset, both finding represent *close* determinations. Petitioner's substantial

delay in seeking treatment is problematic, and while Petitioner was able to establish the necessary onset and severity requirements based on the record as a whole, the fact that Petitioner was able to forego seeking treatment for such a prolonged period of time, coupled with her conversative and relatively limited treatment, is evidence that her SIRVA was very mild. As I discussed at expedited hearing, I am unlikely to award more than $20,000.00 in pain and suffering based on these factors (and therefore Petitioner should be mindful of this is seeking resolution of damages).

### C. Other Requirements for Entitlement

Petitioner has established all other requirements for a Table SIRVA claim. 42 C.F.R. § 100.3(c)(10). There is no history of shoulder pain, inflammation, or dysfunction that would explain the post-vaccination injury. 42 C.F.R. § 100.3(c)(10)(i). Petitioner's pain and reduced range of motion were limited to the shoulder in which the intramuscular flu vaccine was administered. 42 C.F.R. § 100.3(c)(10)(iii). And there is not preponderant evidence of another condition that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(iv). However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.,* receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established as discussed herein (severity) or undisputed in this claim. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. Respondent's Motion to Dismiss is denied. A Damages Order will issue.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

10